A jury convicted the defendant of rape of a child and indecent assault and battery on a child under the age of fourteen.[2] On appeal the defendant argues that he was deprived of a fair trial because of misconduct committed by the prosecutor in her opening statement, direct examination of certain witnesses, and closing argument. We affirm.
1. Opening statement. The defendant challenges the prosecutor's opening statement on two grounds: that she engaged in argument that appealed to the jury's sympathy, and that she misstated the evidence. Because the defendant did not object,[3] we review any errors in the prosecutor's remarks only to determine whether they resulted in a substantial risk of a miscarriage of justice. See Commonwealth v. Sylvia, 456 Mass. 182, 188 (2010).
"The proper function of an opening is to outline in a general way the nature of the case which the counsel expects to be able to prove or support by evidence." Commonwealth v. Croken, 432 Mass. 266, 268 (2000), quoting from Commonwealth v. Fazio, 375 Mass. 451, 454 (1978). "It is not an opportunity for argument." Croken, 432 Mass. at 268. In this case we agree with the defendant that the prosecutor's opening lapsed into argument. The prosecutor began her remarks by using emotionally provocative language to describe how the defendant made the victims feel unsafe in their own home.[4] This was improper. See Commonwealth v. Silva, 455 Mass. 503, 514-515 (2009). She then went on to state that the defendant "[got] away with this crime for many years, until today ... no more" and concluded by commenting that the victims would be testifying in front of "perfect strangers in this strange courtroom" about "memories that they have attempted to forget and to bury." This was also improper. See Commonwealth v. Martinez, 476 Mass. 186, 197-198 (2017) ; Commonwealth v. Riberio, 49 Mass. App. Ct. 7, 10 (2000).
Despite these missteps, however, we conclude that the opening statement did not result in a substantial risk of a miscarriage of justice. "[A] claim of improper [opening statement] by the prosecutor must be judged in light of the entire [statement], the judge's instructions to the jury, and the evidence actually introduced at trial." Commonwealth v. Jones, 439 Mass. 249, 260-261 (2003), quoting from Commonwealth v. Thomas, 429 Mass. 146, 158 (1999). Here, the judge instructed the jury four times -- in his preliminary charge, immediately following the prosecutor's opening statement, before summations, and in his final charge -- that opening statements and closing arguments are not evidence. We presume that the jury followed these instructions, which mitigated the effect of the prosecutor's improper argument. See Thomas, 429 Mass. at 158 ; Martinez, 476 Mass. at 198 ; Riberio, 49 Mass. App. Ct. at 10. Indeed, though the defendant was charged with aggravated rape of Bridget, the jury convicted the defendant of the lesser included offense of indecent assault and battery on a child under fourteen, "demonstrat[ing] their lack of prejudice in weighing the evidence." Commonwealth v. Munafo, 45 Mass. App. Ct. 597, 603 (1998). See Commonwealth v. Grandison, 433 Mass. 135, 143 (2001).
We turn to the defendant's second argument, which is that the prosecutor misstated the evidence by suggesting -- through the use of words such as "constantly," "any chance," and "every time" -- that more incidents of sexual abuse occurred than what the evidence showed. A prosecutor may "state in her opening statement anything she reasonably, and in good faith, expected to prove." Commonwealth v. Qualls, 440 Mass. 576, 586 (2003). "Absent a showing of bad faith or prejudice ... the fact that certain evidence fails to materialize is not a ground for reversal." Ibid. The defendant here has made no showing of bad faith or prejudice. As the prosecutor stated at a sidebar conference, she anticipated that Mary would testify to additional attempts by the defendant to touch her, but was having trouble eliciting the testimony. And Mary did eventually testify that she had told the prosecutor during an interview that the defendant would try to touch her "[e]very chance he could get." Similarly, Bridget testified that she had told the prosecutor that the defendant tried to touch her "every time" he came to the house. While the witnesses' language was plainly hyperbolic, the record establishes that the prosecutor reasonably expected the evidence to support her opening remarks.[5] Any prejudice, moreover, was mitigated by the judge's repeated instructions that opening statements are not evidence. See Sylvia, 456 Mass. at 188-189.
2. Direct examination. The defendant next contends that the prosecutor neglected to lay a foundation for certain questions and asked leading questions during her direct examination of the victims and their brother.[6] He claims that these questions prejudiced him because they implied that he assaulted the victims as part of an ongoing pattern of conduct. We agree with the Commonwealth's characterization, however, that the prosecutor's questioning -- while more suggestive than what is common on direct examination -- was an inartful but good faith attempt to elicit admissible testimony. Her questions did not "imply the truth of a proposition which [she] knew to be false," Commonwealth v. Fitzgerald, 376 Mass. 402, 415 (1978), nor did they serve to put forth the Commonwealth's "version of the events without competent evidence." Commonwealth v. Stewart, 454 Mass. 527, 532 (2009). To the extent that any prejudice resulted from the questions, it was neutralized by the judge's instructions in his preliminary and final charge that questions asked by the attorneys are not evidence. See Commonwealth v. Allen, 379 Mass. 564, 583-584 (1980).
3. Closing argument. The defendant challenges the prosecutor's closing argument on several grounds. He first argues that the prosecutor appealed to the jury's sympathy when she began her summation with a "dramatization" of how Mary reacted when she found out that the defendant was also abusing Bridget. Because the defendant objected, we review for prejudicial error. See Commonwealth v. Cole, 473 Mass. 317, 333 (2015). We discern none. Although the prosecutor's statements were vivid and dramatic, they "were grounded on the evidence and were within the range of rhetoric and 'excusable hyperbole' available to either side in closing argument." Commonwealth v. Odware, 429 Mass. 231, 239 (1999), quoting from Commonwealth v. Sanna, 424 Mass. 92, 107 (1997). For the same reason, we conclude that no substantial risk of a miscarriage of justice resulted from the prosecutor's unobjected-to references to the victims as "two smart beautiful" girls who were testifying about something "painful."
Finally, we reject the defendant's contention, raised for the first time on appeal, that the prosecutor vouched for the credibility of the victims and their brother and engaged in improper burden-shifting. No vouching occurred because the prosecutor did not "express[ ] a personal belief in the credibility of a witness, or indicate[ ] that ... she ha[d] knowledge independent of the evidence before the jury." Commonwealth v. Wilson, 427 Mass. 336, 352 (1998). Instead, the prosecutor argued from the evidence why the witnesses should be believed. This constituted neither vouching nor burden-shifting, but was instead a proper response to defense counsel's closing, in which he forcefully argued that the victims fabricated the allegations. See Commonwealth v. Polk, 462 Mass. 23, 39-40 (2012).
Judgments affirmed.

The victims of the offenses are sisters, whom we shall refer to as Mary and Bridget. Both names are pseudonyms.

While acknowledging that the transcript reflects no objection, the defendant claims that his counsel "appears to have objected." In support of this proposition, he points to the judge's immediate instruction after the prosecutor's opening that "[the opening] wasn't evidence" and defense counsel's comment at sentencing that "[he] objected" to the prosecutor's "opening and closing." The transcript, however, does not reflect a sidebar conference or any inaudible statements before the judge gave the instruction, and the prosecutor did not accede to defense counsel's representation that he objected. If the defendant believed that there was an error in the transcription, it was his burden to move to reconstruct the record. See Commonwealth v. Woods, 419 Mass. 366, 371 (1995). In these circumstances we conclude that no objection was preserved.

For example, the prosecutor stated that the victims' "home should have been a refuge" but, after the defendant assaulted Mary, "her home was no longer a home that she deserved."

The defendant also challenges the prosecutor's statement that the victims' brother saw the defendant sitting by Bridget's bed "in the middle of the night at times." This statement was borne out by the brother's testimony that "[m]ore than once" he woke up and saw the defendant in the room that the brother shared with Bridget.

With regard to some of these questions, the parties disagree as to whether our review is for prejudicial error or a substantial risk of a miscarriage of justice. We need not resolve this conflict, as under either standard our conclusion is the same.